**In re STEWART ENERGY SYSTEMS OF IDAHO, INC., Debtor in possession.**

**Bankruptcy No. 80–00494.**

United States District Court, D. Idaho.

March 26, 1986.

Order May 5, 1986.

Ford Elsaesser, Grudem, Verby, Elsaesser & Jarzabek, Chartered, Sandpoint, Idaho, for Unsecured Creditors Committee.

Richard A. Kirby and Stephen M. DeTore, Washington, D.C., for U.S. S.E.C.

Bliss O. Bignall, Jr., Coeur d'Alene, Idaho, for debtor in possession.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MERLIN S. YOUNG, Bankruptcy Judge.

This matter is before the Court upon a "Motion For Contempt And Motion For Injunction Re: Violation Of The § 362 Automatic Stay By Securities And Exchange Commission." The facts are not in dispute.

On October 23, 1979, the Securities and Exchange Commission (SEC) filed a complaint in the U.S. District Court for the Eastern District of Washington for a permanent injunction and ancillary relief against Stewart Energy Systems of Idaho, Inc., several sister corporations and the following individuals: A. Lamont Nibarger, David C. Holker, Robert Holker and Robert C. Stewart. The complaint alleged security violations. In particular, the defendants were alleged to have illegally and fraudulently offered to sell and to have sold securities in the form of conditional promissory notes and also in the form of investment contracts referred to as dealerships.

A consent decree was entered on October 23, 1979, which decree enjoined all defendant from further sale of the securities described and ordered that defendant Nibarger make an accounting to the Court, the SEC, and a Special Agent to be appointed by the Court. It further ordered that Nibarger disgorge for the benefit of the Stewart of Idaho (debtor herein) all monies or properties obtained in transactions not reasonably related to the engine systems being developed by Stewart of Idaho. The decree further provided that the independent agent was to

"a. Recommend to the Court within a reasonable time to what extent disgorgement should be made by Nibarger to Stewart of Idaho, and

b. Recommend to the Court to what extent the investors should receive an equity position in Stewart of Idaho or its successor companies by virtue of consideration previously paid to Stewart of Idaho, its predecessors or successor companies. The Court shall order an equitable adjustment, if appropriate, based upon such further information from the parties as is deemed appropriate."

The Court retained jurisdiction to implement and carry out the terms of all orders and decrees, etc. following the findings of the Special Agent. It is clear that this judgment decree intended that any monies recovered from Nibarger should be paid to Stewart Energy Systems of Idaho, Inc., the debtor in possession in this Bankruptcy Court, and the "equity position" of investors, usually called backers, should be determined.

Before the "Special Agent" had taken any concrete action under this decree, an action for involuntary bankruptcy was filed against debtor herein. The involuntary bankruptcy proceeding under chapter 7 of the Bankruptcy Code was thereafter converted to the present chapter 11 proceeding.

The officers of the debtor in possession proposed a plan of arrangement which came before the Court for confirmation about December 1, 1981. Confirmation

was objected to by the SEC and after hearing this Court denied confirmation on several grounds. At that time, this Court issued a Memorandum Decision in which it stated:

"The filing of the involuntary petition on April 4, 1980, brought Section 362 of the Bankruptcy Code into effect which stayed any proceeding against the debtor or its property which could be construed as an attempt to recover a claim against the debtor that arose before that date. Insofar as the SEC proceeding in the Eastern District of the State of Washington may relate to the recovery of assets of the debtor from Mr. A. Lamont Nibarger or any other person, jurisdiction is in the bankruptcy court because it has exclusive jurisdiction of all of debtor's property. 28 U.S.C. § 1471(e). As an injunction against sale of securities and other enjoined activities, it is no doubt still effective and enforceable. Mr. Neff's duties relating to a determination of what assets Nibarger should disgorge, is, in my opinion, terminated. The proper procedure to recover debtor's assets from third parties is for the debtor, as the debtor-in-possession, to file an adversary proceeding in this court pursuant to Section VII of the Bankruptcy Rules of Procedure to recover any property belonging to or owed to it by any party. The fact that an examiner or Mr. Neff may report that there are some assets which should be disgorged by Mr. Nibarger will not operate as a judgment requiring turnover. Because debtor-in-possession has all the powers and duties of a trustee in bankruptcy, it is the proper party plaintiff to bring such action and is in fact obligated by its trust to do so. It is also obligated to set aside any preferences or fraudulent transfers made either before or after the commencement of this proceeding."

This decision was not challenged by the SEC, the trustee, or any party in interest.

Thereafter, Mr. Bliss Bignall, Jr. was appointed trustee of debtor in possession and entered into negotiations with Nibarger to obtain funds allegedly due to the debtor corporation as a result of misappropriation of assets of the debtor corporation. On March 13, 1984, Mr. Nibarger executed a promissory note payable to Mr. Bignall as trustee of Stewart Energy Systems of Idaho in the amount of $190,000.00. This note was secured by a trust deed upon certain properties in Spokane County, Washington.

The attorneys for SEC were instrumental in obtaining this note and trust deed, and it was agreed between the SEC attorneys and Mr. Bignall that he, as trustee, would propose a plan of arrangement for debtor whereby the money received from Mr. Nibarger would go in part to defrauded equity security holders, who would have standing equal to general creditors of the debtor corporation in any payment. The trustee has filed such a plan but it has not been noticed for hearing on confirmation.

The SEC contends that this agreement between counsel for SEC and debtor's trustee is somehow binding on the Bankruptcy Court and the general unsecured creditors. The unsecured creditors in 1985, filed a motion requesting that the claims of the "backers," (the defrauded equity security holders) be subordinated to the claims of general creditors pursuant to the provisions of § 510(b) of the Bankruptcy Code. This motion was vigorously contested by the SEC but this Court, on May 23, 1985, held that the "backers'" claims were clearly claims arising from a rescission of a purchase of a security of the debtor and that the Court was required under § 510(b) to subordinate such claims to claims of general unsecured creditors. Notice of this motion was given to all backers by the Clerk of the Court. No individual or group of backers contested the motion.

The SEC was unable to appeal this decision under § 1109 of the Bankruptcy Code. The individual investors who are the real parties in interest did not do so.

Thereafter, the SEC filed a motion in the District Court of the Eastern District of Washington, attempting to nullify the effect of the decision subordinating claims by requesting a modification of the original

decree entered on October 23, 1979. This motion sought an order directing A. Lamont Nibarger to pay the money due on the note, now payable to the trustee of the debtor, to a Special Agent to be appointed by that Court with directions to distribute that money to the backers. The Unsecured Creditors Committee in this bankruptcy proceeding, upon learning of this motion, filed the motion now before this Court.

The SEC has now withdrawn its motion to modify and asks this Court to now vacate the § 362 stay so it can file said motion.

■ Based upon these facts, I conclude that the motion filed in the Eastern District of the State of Washington was a deliberate and willful attempt by the SEC to obtain possession of the proceeds of the Nibarger note, an asset of the bankruptcy estate, in violation of 11 U.S.C. § 362(a)(3).

The SEC attempts to justify its attempt to collaterally attack the order of this Court subordinating the claims of the backers to that of general creditors on the theory that this note and the proceeds of the note were never the property of the bankruptcy estate. This is based upon the agreement with trustee that his proposed plan of arrangement would provide that the proceeds of the note would in part go to the backers, and therefore that this asset was only a contingent asset of the estate.

■ It is clear that the note in question is an asset of the bankruptcy estate and that any property to be disgorged by Nibarger was and is an asset of the estate. The original decree of the District Court for the Eastern District of Washington by its terms so stated. The note given by Mr. Nibarger was payable to and delivered to the trustee of the estate. The trust deed securing the note runs to the benefit of the estate. There is no substantial basis upon which the SEC can avoid the effect of the nonappealable decision of the Bankruptcy Court subordinating the investors whom SEC seek to protect. It has no standing to do so in the absence of any appeal by backers, the real parties in interest.

I therefore conclude that as a matter of law the SEC is in contempt of the stay provisions of § 362 of the Bankruptcy Code and that it should be required to pay the costs and attorney's fees of the Unsecured Creditors Committee in bringing this proceeding.

The stay provided by § 362(a)(3) should not be vacated.

Because there is now doubt as to the power of this Court to enter an order holding any party in contempt, whether it be civil or criminal, I will send this Memorandum Decision to the U.S. District Court for the District of Idaho with a recommendation that the same be adopted as its Findings of Fact and Conclusions of Law and that it enter an order holding that the SEC is in civil contempt of the U.S. District Court for the District of Idaho, and that it be ordered to pay a reasonable attorney's fee and costs to counsel for the Unsecured Creditors Committee.

## ORDER

CALLISTER, Chief Judge.

In accordance with the stipulation of settlement executed by the parties on April 28, 1986, it is hereby ordered:

(1) That the proposed findings of fact and conclusions of law of the bankruptcy court filed on March 26, 1986 are hereby amended, so that the Securities and Exchange Commission is not found in contempt;

(2) Within sixty (60) days of the date of this order, the Commission will pay to counsel for the Creditors' Committee the sum of $927.80 attorneys' fees, costs and damages.